[Crim. No. 3405.   First Dist., Div. One.   Dec. 16, 1957.]

THE PEOPLE, Respondent, v. RAYMOND VILLA, Appellant.

Rhein, Levin & Jackson, Edward Levin and Jay Jackson for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Francis Mayer, Assistant District Attorney, for Respondent.

PETERS, P. J.—Raymond Villa, Matteo Accetta and Salvador Rizzo were charged with rape, with a violation of section 288a of the Penal Code, with robbery, and with conspiracy to commit those crimes. All of the crimes were alleged to have been committed on August 1, 1956, against the same complaining witness, an adult woman. They were jointly tried. All were convicted of some of the offenses. So far as Villa is concerned, the jury acquitted him of rape and of conspiracy, but found him guilty of a violation of section 288a and of robbery. Villa appeals.

On the night of August 1, 1956, the three defendants, all of whom are over 21, and two male companions, Larry Palermo and Larry Pera, visited a bar in the Fillmore district to celebrate the fact that Palermo was leaving for army service the next day. They drove to the bar in Palermo's car from a gasoline service station operated by Pera and located some distance away from the bar, leaving Pera's car at the service station. This was about 9 p. m. At the bar was the complaining witness. She lived with her husband about a half block from the bar. She went down to the bar, alone, about 9 p. m. There she met one of the part-time bartenders whom she knew, had a drink with him, and he left. During the evening and up to about 11 p. m. she consumed about seven or eight Seven-Up bourbon highballs. She testified that during the evening she danced with some sailors, and did not dance with appellant or with any of the men in his party. Several of the defendants testified that the complaining witness danced with several of the men in appellant's party, and this was corroborated by the bartender and the son of the owner of the tavern.

Sometime during the evening Rizzo went back to the gasoline station and got Pera's Plymouth automobile, a four-door sedan, and drove it to an alley near the bar. He gave the keys to Pera, who, in turn, gave them to appellant.

During the evening appellant conversed with the complaining witness and finally asked if he could take her home. The complaining witness testified that she refused the invitation. Appellant testified that she first agreed to his proposition, then changed her mind, then consented to it. From this point on the stories of the involved persons are widely divergent. The complaining witness testified that after she refused appellant's proposition, appellant left the bar, and a short time later, about 11 p. m., she left, intending to walk the short distance to her apartment. Outside the bar Villa accosted her,

repeated his offer, and, when she refused, seized her by the arm and started to pull her toward Pera's car that was parked in a nearby alley. When she screamed and tried to pull away he struck her in the face and in the back of her neck. These blows partially stunned her and appellant threw her into the car. Appellant then drove to Aquatic Park and parked the automobile. During the ride to the park she testified that appellant was slapping and holding her to prevent her from getting out. After he parked, according to the complaining witness, appellant pulled off parts of her clothing and then forced her to have intercourse with him.

Appellant told a different story. He testified that after the complaining witness had agreed to go out with him, the two left the bar together and got in the Plymouth; that the car's battery was dead so he got out of the car, leaving the complaining witness alone, and went back in the bar and asked his friends to give him a push, which they did. This story about a dead battery and the push by his friends was corroborated by the appellant's companions. Some doubt is cast upon this story not only by the testimony of the complaining witness, but also because when the car was seized by the police the next morning the car started without difficulty and the owner of the car admitted that the battery had not been touched in the past several days.

Appellant, in addition to testifying that the complaining witness went with him voluntarily to Aquatic Park, testified that during the ride she stated that someone was following them, and that he then successfully got away from the car that was following them by taking several detours. He also testified that at Aquatic Park the complaining witness voluntarily consented to have intercourse with him. After this act of intercourse had been completed, appellant prepared to get out of the car to rearrange his clothing when another car containing the other two defendants and Palermo and Pera drove into the parking lot and parked about 50 to 75 feet behind the Plymouth. At the trial appellant testified that defendant Rizzo then came up and asked about his chances. Appellant told him that the complaining witness had been "easy" with him, and for Rizzo to go ahead and try if the woman was willing. Appellant then walked back to and got in the other car. A short time later Accetta got out and went over to and got in the Plymouth with Rizzo and the woman. In a short time the door of the Plymouth opened and appellant saw the complaining witness' bare legs fly out

and he heard her screaming. Appellant then went over to the Plymouth, looked in, and said "What's going on in here? No need for that. Crazy or something?" Appellant saw that the woman had almost all of her clothes off, that Accetta had forced her head down and was forcing her to orally copulate while Rizzo was having intercourse with her from the rear. The complaining witness was not sure whether appellant was in the Plymouth while these acts were going on, while Accetta testified that all three defendants were in the back seat with the woman and that appellant had intercourse with her from the rear.

At any rate, appellant testified that he then got into the front seat of the Plymouth and started to drive towards the service station operated by Pera. He heard the complaining witness several times beg Accetta "Please don't hit me anymore. Leave me alone," but did nothing about it. He knew that the act of oral copulation was still going on, but did nothing about it. Defendant Rizzo then asked to be let out of the car so that he could walk to his automobile. Appellant stopped the Plymouth in an alley, and the other car stopped behind him. Appellant got out of the Plymouth and walked over to the other car. During this interval, defendant Rizzo, in front of appellant, took all the money from the complaining witness' purse, and dumped its other contents in the street. Appellant testified that he picked up these articles, returned them to the purse, and returned the purse to the car. He did not suggest to Rizzo that he should return the money taken from the purse.

Next, according to appellant, he drove to Pera's gasoline service station. The complaining witness was screaming and yelling. Accetta had taken her dentures and refused to return them. Appellant did nothing about this controversy. When the Plymouth arrived at the gasoline station the complaining witness was making so much noise that Accetta threatened to throw her in the bay. Appellant testified that he and Palermo restrained Accetta while the complaining witness escaped from the car, ran across the street to the entrance of a night club nearby, and asked some people to help her, declaring that she had been raped. They sent her to the police. The evidence of these people and of the police indicates that the complaining witness had been brutally beaten.

When appellant was first picked up for questioning he walked out of the district attorney's office without permission and drove away before he could be questioned, and when the

police went to the home where he was staying, he ran out the back door and hid in the basement in an attempt to avoid arrest.

Appellant was acquitted of the rape and conspiracy charges but found guilty of a violation of section 288a of the Penal Code and of robbery. Admittedly, appellant did not directly participate in the commission of either of these crimes. He can be held, if at all, as a principal only as an aider and abettor. It is appellant's major claim that he in no way aided and abetted the criminal acts of his codefendants. He contends that the evidence shows that he disapproved of their acts. He asserts that his cowardice in failing to prevent or restrain these men from doing what they did cannot support a finding that he aided or abetted them.

Before directly discussing the evidence something should be said about how this evidence must be reviewed in view of the fact that appellant was acquitted of the rape and conspiracy charges. ▮ The crime of aiding and abetting is a separate and distinct offense from that of conspiracy. (*People* v. *Huling*, 71 Cal.App. 144 [234 P. 924].) ▮ Although the rape and conspiracy charges involved some of the same acts as were involved in the section 288a Penal Code and robbery charges, the acquittal on the first two charges does not affect the validity of the conviction on the other two charges. (*People* v. *Stangler*, 18 Cal.2d 688 [117 P.2d 321]; *People* v. *Amick*, 20 Cal.2d 247 [125 P.2d 25].) ▮ Section 954 of the Penal Code provides, in its last sentence: "An acquittal of one or more counts shall not be deemed an acquittal of any other count." Under this section, each count charging a separate and distinct offense must stand or fall on its own merits. The disposition of one count has no effect or bearing upon the other counts. This is so even though the respective verdicts in the various counts may be logically inconsistent. (*People* v. *McCree*, 128 Cal.App.2d 196 [275 P.2d 95]; *People* v. *Codina*, 30 Cal.2d 356 [181 P.2d 881]; *People* v. *Ranney*, 123 Cal.App. 403 [11 P.2d 405].) ▮ Thus, in considering the sufficiency of the evidence to sustain the conviction on the section 288a of the Penal Code and robbery counts the court must consider all of the evidence, including the relevant portions of the evidence relating to the rape and conspiracy charges. The jury was entitled, indeed obliged, to treat each count separately.

▮ To be an abettor the accused must have instigated or advised the commission of the crime or been present for the

134

purpose of assisting in its commission. He must share the criminal intent with which the crime was committed. ■ The mere presence of the accused at the scene of the crime does not alone establish that the accused was an abettor. (*People* v. *Hill*, 77 Cal.App.2d 287 [175 P.2d 45].) In that case it was held that the driver of the car that conveyed certain robbers to and away from the scene of the crime, was not an abettor, where the evidence showed that he had no knowledge of his companions' felonious intent, was asleep in the car while the crime was committed, did not participate in the fruits of the robbery, and did not willfully aid the perpetrators in their attempt to escape detection.

■ But while mere presence alone at the scene of the crime is not sufficient to make the accused a participant, and while he is not necessarily guilty if he does not attempt to prevent the crime through fear, such factors may be circumstances that can be considered by the jury with the other evidence in passing on his guilt or innocence. ■ One may aid or abet in the commission of a crime without having previously entered into a conspiracy to commit it. (*People* v. *Turner*, 86 Cal.App.2d 791 [195 P.2d 809]; *People* v. *Le Grant*, 76 Cal.App.2d 148 [172 P.2d 554]; *People* v. *Weber*, 84 Cal.App.2d 126 [190 P.2d 46].) ■ Moreover, the aider and abettor in a proper case is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged. ■ Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury. (*People* v. *Goldstein*, 146 Cal.App.2d 268 [303 P.2d 892]; *People* v. *Beltran*, 94 Cal.App.2d 197 [210 P.2d 238].)

■ In order to hold the accused as an aider and abettor the test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures. In *People* v. *Luna*, 140 Cal.App.2d 662 [295 P.2d 457], the defendant was held to have aided and abetted his codefendant in making an assault on the prosecuting witness where he entered into an altercation which reasonably could lead to trouble, stood by while his codefendant committed the assault, prepared to enter the fight if necessary, and finally entered the fight. The court pointed out that while one who merely stands by watching an assault is not guilty of aiding or abetting, and while the defendant was

acquitted of the charge of assault on the person with whom he fought, the evidence sustained his conviction for aiding and abetting his companion's assault.

It has been held that the person who furnishes a room with knowledge that a statutory rape is to be committed there is guilty as an aider and abettor. (*People* v. *Wood,* 56 Cal.App. 431 [205 P. 698].) And a person used as a lookout is an aider and abettor. (*People* v. *Silva,* 143 Cal.App.2d 162 [300 P.2d 25].) In *People* v. *Marshall,* 132 Cal.App.2d 18 [281 P.2d 260], the accused was acquitted of rape and kidnapping, but was found guilty of a violation of section 288a of the Penal Code. The evidence showed that he had not participated in compelling the complaining witness to commit the act, but it also showed that he was the driver of the car, that he and other defendants had forced the victim into the car, and that he had had intercourse with her. This was held sufficient to sustain the conviction of aiding and abetting a violation of section 288a of the Penal Code committed by one of his companions.

A case somewhat similar to the instant one is *People* v. *Mummert,* 57 Cal.App.2d 849 [135 P.2d 665]. There the appellants stood by while their companions committed a rape. At page 855, the court, in affirming the conviction for having aided and abetted the offense, stated: "From the first exhibition of a criminal intent toward her they had demonstrated perfect harmony and fraternal cooperation among themselves. For any man to stand by serenely and sympathetically in the presence of an act of rape by his associate is itself proof of his approval of and cooperation with the criminal act. . . . They aided and abetted by their actual presence, and by their acts they rendered actual assistance to the perpetrator. [Citing a case.] At the time of the rape by each of the men the other three stood near by and abetted the perpetrator by presenting a show of force and by keeping watch against intrusion. As each without resentment toward his acting confederate and without concern for the girl permitted the outrage, they exemplified a united and single purpose which would brook no interference. Each thus encouraged and aided his several companions and was therefore a principal in each of the crimes."

Tested by the standards announced in these cases we think that although acquitted of the rape and conspiracy charges, the evidence is sufficient to sustain the conviction of having aided and abetted the robbery and section 288a Penal Code offenses. Of course, the appellant's presence at the scene of

the crime, his knowledge that a crime was being committed, and his failure to prevent it, alone could not support the conviction. But these are factors the jury could consider along with the other evidence. Under rules already discussed, the jury, although it acquitted appellant of the rape and conspiracy charges, could find that appellant forced the complaining witness in his car, beat her, and forced her to submit. It could also find that he then turned the victim over to his friends for their pleasure, and then drove the get-away car to the destinations desired by his confederates. Moreover, it is a reasonable inference from the evidence that the Palermo car followed appellant to Aquatic Park as part of a preconceived plan. The driving to the bar in one automobile, then, after seeing and talking with the complaining witness, going out and getting another car and turning over the keys to appellant, and then arriving so fortuitously at Aquatic Park, certainly supports that inference. But even if that were not sufficient there is other evidence. The jury was not bound by appellant's version of what happened at Aquatic Park. They could have believed Accetta or parts of the testimony of the complaining witness that indicated that appellant took a more or less active part in the section 288a offense and certainly aided and abetted it. It is a reasonable inference from the evidence that when he allowed first Rizzo and then Accetta to enter the Plymouth with the girl, he knew that they intended to have intercourse with the victim whether she consented or not. He is, of course, liable for the consequences that followed. Then appellant admittedly drove the automobile to the destinations desired by his codefendants while the act of oral copulation was taking place. He knew that the act was taking place, but did nothing to stop it. He knew that Accetta was beating the woman, but did nothing to stop it. At one place on the return trip he stopped the car in an alley and knew that Rizzo stole the money from the complaining witness' purse, and did nothing to stop it. It is a reasonable inference that he drove away from Aquatic Park because of fear that the victim's screams would attract attention. ■■■ Thus, under the evidence, he induced the complaining witness to go with him in his borrowed car and then he allowed that car to be used to commit the violation of section 288a, then drove it away while the violation was taking place, and did not do anything to prevent the offenses committed or the brutal beating that the victim endured. He knew of the robbery and made no effort to stop it. Under the

circumstances his presence and acts helped to make the crimes possible. His silence and lack of objection under the circumstances amounted to tacit approval of the acts of his codefendants. The evidence supports the convictions.

The only other contention of appellant relates to his extrajudicial statement made by him to the district attorney at the time of his arrest. This statement was tape recorded, unknown to appellant, and was introduced into evidence by the prosecution. It is contended that the extrajudicial statement contains statements irreconcilable with guilt, and that for this reason the prosecution was bound by the extrajudicial statement, there being no competent and substantial evidence to the contrary.

The concept that the prosecution is "bound by" extrajudicial statements introduced by the prosecution which are irreconcilable with guilt is applicable only where there is no other evidence which supports the finding of guilt. (*People* v. *Acosta,* 45 Cal.2d 538 [290 P.2d 1].) Where there is prosecution evidence which tends to show criminality, it is the function of the jury to determine whether to believe that evidence or the extrajudicial statement. (*People* v. *Silva,* 143 Cal.App.2d 162 [300 P.2d 25].) As the evidence already summarized indicates, that is this case.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.