[Crim. No. 4382. First Dist., Div. One. April 13, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM HOWARD, Defendant and Appellant.

Milton D. Rosenberg, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from a judgment of conviction, after a jury verdict, of violation of section 211 of the Penal Code, robbery (first degree, the jury having found that defendant used a deadly weapon, a knife, in the robbery).

QUESTIONS PRESENTED.

1. Were certain witnesses accomplices within the meaning of section 1111, Penal Code?

2. Sufficiency of the evidence.

3. Alleged error of court in permitting the prosecutor to impeach his rebuttal witness and his alleged misconduct in doing so.

RECORD.

Defendant,[1] together with Raymond Scarborough, William Tony and Simon Gibson, was indicted on a charge of robbing James Harry Weber, clerk of the Liquor Chest, a liquor store in Monterey. The disposition of the case with respect to Scarborough and Gibson does not appear from the record. From a reference in the prosecutor's argument to the jury it may be deduced that the prosecution against Tony was dropped.

At about 10:45 p.m. on the night of January 13, 1963, three Negro males entered the Liquor Chest, a retail liquor store in Monterey. The clerk of the store, one James Weber, testified that one of them, whom he later identified from a police lineup and at trial as defendant Scarborough, produced a hunting knife or a kitchen knife and forced him to lie on the floor face down. While he was on the floor, money was taken from the cash register. After they had cleaned out the cash register, one of the three came over and pushed the knife against the back of Weber's neck. One of the three men said, "If you look up we'll kill you" and asked, "Is there any more money?" Weber mentioned his wallet and it and his money clip, which was in another back pocket, were taken from his person. Someone then asked if there was any more money and Weber answered no. Weber then testified that he heard some bottles clinking and footsteps disappearing. When he got up after a few minutes, Weber noted that the cash register was empty and his wallet and money clip were gone. Weber admitted that he did not inspect the store to see if anything other than the money was missing. On cross-examination, however, he said that he was sure a bottle of Teacher's Scotch was missing but that was all of which he could be certain. He further admitted that he could not identify the other two men.

At trial, the prosecution called as a witness one Maria

---

[1]Defendant was represented at the trial by counsel apparently of his own choosing. He is represented upon this appeal by counsel appointed by this court.

Nunez who, at the time of the robbery resided in the home of defendant Simon Gibson. At the time of the robbery she was 14 years old. She testified that on the evening of January 13, 1963, she was in defendant's car with defendant, Scarborough and Tony, and their respective wives, and Gibson. In the course of their riding about, they went to Monterey and began to drive up Carmel Hill. The car stopped and defendant, Scarborough and Gibson got out. When the three returned they were carrying some four or five bottles of liquor, a box containing rolls of pennies and two cartons of cigarettes, and were running.[2] She further testified that thereafter they all proceeded to Salinas Road. During the time subsequent to defendants' reentry of the car, the defendants cleaned the bottles with a handkerchief and threw them away out the window of the car. During this same time, she testified that she saw Gibson with a wallet but that there was no conversation with respect to it. Later, however, Gibson burned a wallet apparently in the presence of the witness and others not defendants herein. After the defendants reentered the car, at least defendant changed from sport clothes to suit pants and shirt. She further testified that at the time the car stopped in Monterey she saw a large hunting knife under the seat of the car. After defendant had changed clothes, they all proceeded to a restaurant in Santa Rita where they ate a meal. At the end of this testimony, the prosecution rested.

The defense called two waitresses who were on duty in the restaurant in Santa Rita on the night of January 13, 1963. They clearly recalled defendants eating in the restaurant that night, but could only place the time of their arrival as somewhere between 10:30 p.m. and 12:30 a.m. They thought defendants and the other passengers of the car were there about an hour and 15 minutes.

Each of the defendants testified and all denied any implication in the crime, claiming they were in the restaurant about 10:45 that night. Gibson denied being in the area of Carmel Hill that night. He testified that he bought only one pint of whiskey that night at a store in New Monterey. He denied seeing a cigar box with rolls of pennies in it. Scarborough denied ever having seen the victim of the robbery before. He denied running back to the car after leaving the liquor store which he alleges he entered with Gibson and defendant to buy a bottle. Though all three were in jail

---

[2]On cross-examination she admitted that she did not see them running when they returned to the car.

together, he denied they talked about the case. Defendant denied he was ever in the area of Carmel Hill on the night of January 13, 1963, and denied ever running back to the car.

The prosecution called Janice Tony, who was a passenger in the car, as a rebuttal witness. She denied that defendants returned to the car running and denied they had a cigar box full of pennies when they returned. The prosecution claimed surprise and sought to impeach her. The matter of impeachment of Mrs. Tony will be discussed hereinafter.

1. ACCOMPLICES.

Defendant contends that Maria Nunez and Mrs. Tony were accomplices of defendants in the robbery and that, therefore, their testimony must be corroborated and that it was not.

Section 1111 of the Penal Code provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

Thus, the test as to whether the two witnesses were accomplices is whether under the circumstances of this case they could be prosecuted for robbery. It clearly appears that they could not. There is nothing in the record to indicate that either witness in any way instigated, advised, encouraged or participated in the robbery or the proceeds thereof, or in any way facilitated the commission of the crime. See *People* v. *Means* (1960) 179 Cal.App.2d 72, 85 [3 Cal.Rptr. 591], where the defendant's girl friend was riding with him while he was delivering narcotics. Mere presence at the scene of the crime is not sufficient, without more, to establish that a witness was an aider or abettor, and therefore an accomplice. (See *People* v. *McCleary* (1962) 205 Cal.App.2d 432, 435-436 [23 Cal.Rptr. 173], hearing denied; *People* v. *Shaw* (1941) 17 Cal.2d 778, 800 [112 P.2d 241]; *People* v. *Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People* v. *Rosoto* (1962) 58 Cal.2d 304, 329 [23 Cal.Rptr. 779, 373 P.2d 867].) There is nothing in the record to indicate that either witness knew that the robbery was to be committed that night or by whom it was to be committed nor to bring them within the

following definition: " ' " ... an accomplice is one who has been concerned in the commission of a crime, whether he has directly committed the act or aided and abetted in its commission or advised and encouraged its commission and is liable to prosecution for the identical offense charged against the defendant. ..." ' " (*People* v. *Shaw, supra,* 17 Cal.2d at p. 800.)

"To be an abettor the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission. He must share the criminal intent with which the crime was committed. The mere presence of the accused at the scene of the crime does not alone establish that the accused was an abettor. [Citation.] ... In order to hold the accuser as an aider and abettor the test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." (*People* v. *Villa, supra,* 156 Cal.App.2d at pp. 133-134.)

Under the evidence there was nothing said or done by Maria Nunez or Mrs. Tony which could have justified a prosecution of either for the crime of robbery.

2. SUFFICIENCY OF THE EVIDENCE.

█ The testimony indicates that three Negro males robbed the Liquor Chest of about $190 and at least a bottle of Teacher's Scotch. The robbery took place on the evening of January 13, 1963, about 10:45 p.m. One of the participants was positively identified. Defendant was in his own car during the evening in question with the one person identified positively by the victim, along with a number of other persons. There is evidence that defendant left the company of the others along with another defendant and the identified criminal in the vicinity of Carmel Hill during the evening and the three of them returned running, carrying several bottles of liquor, two cartons of cigarettes and rolls of pennies. Defendant changed his clothes in the car after his return to the car and the defendants later wiped the bottles off with a handkerchief and threw them out of the window of the car. Though all defendants deny implication in the crime, there is sufficient evidence upon which the jury could have based its verdict.

3. IMPEACHMENT.

█ Defendant contends that the trial court erred in permitting the People to impeach its own witness Mrs. Tony, and that the prosecutor was guilty of misconduct in doing so.

As a prosecution witness Mrs. Tony denied that when defendants returned to the car in which she was riding they were running or that they had a cigar box full of pennies when they returned. Claiming surprise the district attorney sought to impeach her. Thereupon defendant's counsel advised her to take the Fifth Amendment. The prosecutor stated that there was nothing in the statement sought to be used to impeach that would implicate the witness in any crime. He further stated that the statement he sought to use was adduced in the police investigation and was brought forward at the time her husband was under charges. Moreover, he stated that he had no intention of prosecuting her and asked that she be granted immunity under the applicable statute. The court granted the request to permit impeachment.

The prosecution after laying proper foundation then read a statement by Mrs. Tony made on January 31, 1963, at the police station in Monterey. The first part of the statement dealt with the actions of persons not defendants in the case. This was stricken at the request of the *prosecution*. The second part of the statement that was read stated that on the night in question defendants parked the car on a side road in Monterey. They left the car and returned on the run with about five fifths of whisky. " ... Gibson hollered, 'Let's get out of here,' and the tone of his voice indicated they had been in trouble." Gibson then remarked, "Boy, that was a close one."

Mrs. Tony then denied she made any of the statements on the second page of the alleged police interview. The prosecution then asked whether certain questions were asked her and certain answers given. These dealt with the defendants running back to the car and indicating by their statements that there had been a robbery. She denied she answered as the answers from the statement indicated she had. The statement was denied admission as evidence. The determination of surprise rests in the sound discretion of the trial court. "Whether a party is surprised at the conduct of his witness is itself a fact to be ascertained by the trial court based upon the demeanor of the surprised person. Therefore, a ruling upon an offer made on the ground of surprise is an exercise of discretion." (*Sandoval* v. *Southern Cal. Enterprises, Inc.* (1950) 98 Cal.App.2d 240, 245 [219 P.2d 928].) "[I]t has been held that the trial courts should be liberal in permitting such impeachment, and doubts should be resolved

in favor of allowing the testimony." (*People* v. *Spinosa* (1953) 115 Cal.App.2d 659, 668 [252 P.2d 409].) ██ "To permit impeachment of one's own witness in this state, three elements must exist: (1) damage to the party calling the witness; (2) materiality of the evidence; and (3) surprise at his present testimony." (*People* v. *Pickens* (1961) 190 Cal. App.2d 138, 147 [11 Cal.Rptr. 795].)

██ Mrs. Tony's testimony at the trial that defendants did not come running back to the car and did not have any rolls of pennies when they returned (contrary to her claimed statement to the police) damaged the prosecution in that it corroborated defendants; hence the first test set forth in *Pickens, supra,* was met. As to the second test it was obviously material evidence. The third test was met when the district attorney claimed surprise and produced statements of the witness to the contrary of her testimony. During the discussion of the admissibility of the impeaching evidence defense counsel said that he would like an opportunity to examine the basis of the prosecutor's claim for surprise. The court told him to "go ahead." Instead of doing so he advised Mrs. Tony "to take the Fifth Amendment," and never did get around to the question of surprise. The court did not abuse its discretion in allowing the impeaching testimony. There was no error or misconduct in the action of the prosecutor in impeaching the witness.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 3, 1964.