[Civ. No. 22505.   First Dist., Div. Two.   Feb. 15, 1965.]

JULIO PINELL, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; THE PEOPLE, Real Party in Interest.

Louis V. Vasquez for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Michael J. Phelan, Deputy Attorneys General, for Respondent and Real Party in Interest.

TAYLOR, J.—Petitioner, Julio Pinell, together with Felix Jose Torres and Hugo A. Pinell, were indicted on counts of kidnapping, rape, robbery, oral copulation and sodomy. At the arraignment in the superior court, petitioner made a motion under Penal Code section 995 alleging that there was lack of probable cause. The court dismissed the kidnapping charge but denied the motion on all other counts and petitioner now seeks a writ of prohibition under Penal Code section 999a restraining respondent court from proceeding further in this action.

The testimony of the victim and other witnesses given before the grand jury disclosed that an unmarried female 22 years of age was walking home along Broadway near Polk Street in San Francisco at about 2:30 a.m. on October 12, 1964, when

she was brutally attacked and severely injured by Hugo Pinell. He forced her into an automobile driven by Felix Torres and the two men then proceeded to drive her to Julio Pinell's home at 228 Laussat Street. Hugo was Julio's nephew and Torres had been staying with Julio at the Laussat Street address. The victim was taken to a bedroom by her assailants, undressed and subjected to acts of rape, copulation and sodomy by Hugo Pinell. While in the room with Hugo, she overheard a conversation in another room between Felix Torres and a third person which she could not understand as it was in a foreign language.

After two or three hours and many requests of Hugo to be taken home, the victim was led to another bedroom and there forcibly raped by Felix Torres. She was then given a blanket to wrap herself in and taken by Torres through the kitchen into a third bedroom where petitioner was in bed covered up. Torres pushed her toward the bed and Hugo stated, referring to petitioner Julio: "He wants to have his fun." She sat on the edge of the bed. Julio did not say or do anything. At this point, the victim became ill and Hugo and Torres took her through the kitchen in the nude and onto the back porch where she vomited in the garbage can. She was then brought back into the kitchen where someone put a robe over her. Petitioner, who by now had gotten out of bed and put on his trousers, placed a bandage over her bleeding eye. She was then allowed to dress, given her purse and taken by Hugo Pinell and Felix Torres to the vicinity of Broadway and Van Ness Avenue where she was released. Nine dollars and fifty-five cents was missing from her purse. Just before she left the house, Julio had asked her to look in her purse.

Later in the day when a police inspector went to petitioner Julio's residence, Julio first denied that the victim had been at the house that morning, but when confronted by the girl, admitted that she had been there with Hugo Pinell and Felix Torres. It was subsequently determined that the two assailants had fled to Los Angeles. Julio told the officer that he had gone to bed around 11 p.m. and had not seen the girl until she was brought into his bedroom at 4 or 5 a.m. but that when he saw the girl nude, he supposed what had happened to her. He said that Hugo had sent her in and ". . . if she wanted to fuck with me I would fuck with her, but if she didn't want to, it is okey." Julio then referred to a conversation he had with Torres while Hugo Pinell was with the girl and before she was brought to Julio's room in which Torres related that Hugo

had hit her and Julio said that this was bad. After his arrest, Torres told the police officers that while Hugo was with the girl, Torres went into Julio's room ". . . and told Julio what had happened, that Hugo had hit the girl, that they had a woman in the house and that he could have some, too, if he wanted some; and . . . Julio was angry because he said Hugo shouldn't have hit her."

The sole question is whether the evidence was sufficient to establish probable cause and thus to hold petitioner for trial on the crimes charged. ■ Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344]). ■ A prosecution will not be prohibited if there is *some rational ground* for assuming the possibility that an offense has been committed and the accused is guilty thereof (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183-184 [281 P.2d 250]). ■ A count in an indictment which is wholly without evidentiary support cannot stand (*People* v. *Crosby,* 58 Cal.2d 713, 724 [25 Cal.Rptr. 847, 375 P.2d 839]).

■ A person who aids and abets another in the commission of an act constituting a crime is liable as a principal in the same manner as the person who actually committed the crime (Pen. Code, § 31). ■ One may aid or abet in the commission of a crime without having previously entered into a conspiracy to commit it (*People* v. *Turner,* 86 Cal.App.2d 791 [195 P.2d 809]). ■ Neither presence at the scene of a crime, nor failure to take steps to attempt to prevent a crime, establish that a person is an aider or abettor. Such would merely be evidence to be considered along with other evidence in passing upon the question of guilt (*People* v. *Villa,* 156 Cal.App.2d 128, 134 [318 P.2d 828]). ■ The test is whether the accused, in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures (*People* v. *Luna,* 140 Cal.App.2d 662 [295 P.2d 457]; *People* v. *Wood,* 56 Cal.App. 431 [205 P. 698]; *People* v. *Silva,* 143 Cal.App.2d 162 [300 P.2d 25]; *People* v. *Marshall,* 132 Cal.App.2d 18 [281 P.2d 260]). ■ There must be proof that the accused not only aided the actor but at the same time shared the criminal intent (*People* v. *Hill,* 77 Cal.App.2d 287 [175 P.2d 45]).

■ The prosecution does not contend that petitioner actually committed any of the offenses charged but attempts to hold him as an aider and abettor. There is no evidence that

he in any way assisted the other defendants or encouraged them by word or gesture in their misdeeds. There is not a word of testimony that he knew that Torres and Hugo were going to kidnap the girl and bring her to his home. He went to bed at 11 p.m., several hours before she was brought to the house, and did not leave his bed until after her brief presence in his bedroom, sometime between 4 and 5 a.m.

Apparently Torres informed Julio, while the victim was being assaulted by Hugo, that they had the girl in the house but the evidence is uncontroverted that Julio was angry when he was told that Hugo had struck the girl and that he expressed himself as not interested in having intercourse with her unless it was voluntary. There is no testimony that she said or did anything that would make petitioner aware of her predicament before he actually saw her in his bedroom. Furthermore, even if we assume, arguendo, that he knew the girl was being attacked and did nothing about it, additional implicating facts showing encouragement would be required to hold him as an abettor (*People* v. *Villa, supra*).

Finally, the victim testified that when she was brought to Julio's bed, he neither touched nor conversed with her, that after she became ill and was taken to the back porch, he applied a bandage to her bleeding eye, and that when she left, he inquired as to whether she had looked into her purse. This testimony, together with the fact that he did not flee, as did the other defendants, would all tend to negate any criminal intent on his part. His initial denial to the officers that the girl had been in his home indicates nothing more than a reluctance to involve himself or the other two defendants, one of whom was his own nephew.

The prosecution relies on *People* v. *Mummert*, 57 Cal.App.2d 849 [135 P.2d 665], and *People* v. *Griffin*, 106 Cal.App.2d 531 [235 P.2d 424]. These cases are clearly not in point. In both cases, all of the defendants actually committed an assault on the victim and each was charged with all of the counts on the ground that they were aiders and abettors as well as actors. The evidence in both cases showed that defendants were acting in concert, shared a common criminal intent, stood by with full knowledge that the crime which they had just committed or were contemplating was then being committed by their companions, and denied the victim's requests for assistance.

Conjecture and surmise are no substitute for competent evidence (*People* v. *Davidson*, 227 Cal.App.2d 331, 337 [38

Cal.Rptr. 660]) and we have concluded that the record in this case is such that no man of ordinary caution or prudence could conscientiously entertain a strong suspicion of the guilt of the accused.

Let a writ of prohibition issue.

Shoemaker, P. J., and Agee, J., concurred.