[Crim. No. 19780. Second Dist., Div. Five. Feb. 23, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS CORNELL DICKERSON, Defendant and Appellant.

722

## Counsel

Joe Reichmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Lawrence P. Scherb II, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**KAUS, P. J.**—Defendant appeals from a conviction of murder in the first degree. At his trial there was substantial agreement as to the events which resulted in the death of the victim.

The evidence offered at trial indicates that on three occasions over a period of ten days defendant entered a hamburger stand called Burger Bill's. On the first occasion an argument resulted between defendant and the cook, Jimmy, ending in a fight outside, after which defendant and an unidentified companion were warned not to return. A little over a week later defendant did return with a different friend, Bradley. After an argument Jimmy telephoned his brothers for aid. Defendant was chased away, one of the brothers threatening to kill him if he returned. A few days later defendant evidently enlisted the aid of a few more of his friends and returned to Burger Bill's. Defendant procured at least one baseball bat, while a disassembled rifle was obtained by a friend. Defendant and Bradley went directly to Burger Bills, while his friends McCullin, Ferguson, Whitley, and Johnson approached from a different direction and remained out of sight. The rifle had not been assembled when the group split up. It was then not in possession of defendant or Bradley.

When defendant and Bradley entered Burger Bill's Jimmy told the counter girl to call the police from the nearest residence, about fifty yards away. Evidently by coincidence, Jimmy's two brothers arrived about the same time in a station wagon. Jimmy went outside and told them that defendant and Bradley were the ones who had been giving him trouble. After what each side interpreted as threatening words or gestures from the other, Bradley apparently signaled for aid and the defendant's remaining four friends came from behind the burger stand. Jimmy and his brothers, now outnumbered, jumped into the station wagon. One was apparently armed with a rubber mallet. As the car attempted to pull out of the parking lot, its engine stalled, and defendant's friends broke many of the windows with baseball bats. As the car was again started one shot was fired, which killed one of Jimmy's brothers.

Defendant's friends had assembled the rifle behind the hamburger stand, and it was apparently Ferguson who fired the shot. The next day a policeman, while talking with defendant's mother, noticed a baseball bat with glass imbedded in it against a wall adjacent to the front porch of defendant's house.

The theory on which the case was tried was that the one who fired the shot did so with malice, and that the shooting was either deliberate and premeditated, or was perpetrated by "lying in wait." (Pen. Code, § 189.) It was thus first degree murder, which defendant had aided and abetted, making him guilty as a principal. (Pen. Code, § 31.)

Defendant's testimony as to the events leading to the killing was similar to that of the prosecution witnesses. Defendant denied that he went to

Burger Bill's to start any trouble on any of the occasions, but admitted that he had his friends along on the night of the killing so that he would not be chased away again. He had given a baseball bat to Whitley before going to Burger Bill's, and had seen the rifle parts being carried by his friends, though he thought it might have been a pellet gun. He knew of no plan for his four friends to remain hidden until Bradley or he gave a signal.

Defendant testified that soon after he and Bradley arrived at Burger Bill's, Jimmy approached him and two other men approached Bradley. They were making threats, and they may have been carrying weapons. Bradley said "Come on. Let's get out of here," and they both ran. Defendant heard a shot as he was running out of the parking lot. He saw Ferguson, McCullin and Johnson approaching the car as he ran off. He didn't know that anyone had been hurt or killed until he was arrested the next day.

None of the various witnesses to the events were able to identify defendant as one of those who attacked the station wagon.

Defendant, through his attorney, filed an appellant's opening brief. In addition, defendant, with the aid of another prison inmate, prepared an appellant's supplemental brief with several additional contentions.

1. ■ Defendant first argues that certain evidence concerning his hair was improperly admitted in rebuttal. During the prosecution case in chief a witness testified on redirect that, in contrast to its appearance at the trial, defendant's hair was "matted down" at a lineup. Later, on cross-examination, defendant was asked, over objection, whether he had matted his hair down just before the lineup. He answered that he had not. He was then shown two photographs of himself. In rebuttal and over objection, two police officers were called to identify the photographs as depicting the matting down of defendant's hair soon after he was informed that he would take part in a lineup.

The People argue that this was proper rebuttal testimony in that it impeaches defendant's testimony on cross-examination. It tends to impeach defendant's testimony, but the reason it was offered originally was because it tended to show a consciousness of guilt.

While all cases are perhaps not easily reconcilable (see Witkin, Cal. Evidence (2d ed. 1966) §§ 1098, 1099) it does appear to be the accepted view that the mere fact that evidence which could have been offered as the prosecution's case in chief does not become proper rebuttal solely

because it contradicts the defense. (*People* v. *Carter,* 48 Cal.2d 737, 753 [312 P.2d 665].) However, even assuming that the court erred in allowing the evidence, the question remains whether the error was prejudicial. Defendant argues only that "it was not fair." While it is certain that error of the sort committed here could in many cases have a very substantial prejudicial effect, we are satisfied that it did not in this case. There is no indication that the evidence as to defendant's hair was magnified in significance because it was received out of order. (*People* v. *Wein,* 50 Cal.2d 383, 407 [326 P.2d 457]; cf. *People* v. *Carter, supra,* 48 Cal.2d 737, 753.) We are therefore convinced that the error did not result in a "miscarriage of justice." (Cal. Const., art. VI, § 13; *People* v. *Fitzgerald,* 56 Cal.2d 855, 861 [17 Cal.Rptr. 129, 366 P.2d 481].)

2. ■ Defendant requested a series of jury instructions relating to self-defense, all of which were refused by the court. To the refusal to instruct as to self-defense defendant assigns error. Defendant is entitled to instructions on his theory of the case as disclosed by the evidence. (*People* v. *Terry,* 2 Cal.3d 362, 401 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *St. Martin,* 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281]; *People* v. *Cram,* 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393]; *People* v. *Newton,* 8 Cal.App.3d 359, 377 [87 Cal.Rptr. 394]; *People* v. *Young,* 214 Cal. App.2d 641, 645 [29 Cal.Rptr. 595].) At trial defendant contended that he had been unreasonably and forceably ejected from the hamburger stand on two previous occasions, and that he had a right to return the night of the killing, prepared to repel any further unjustified attacks. In addition, defendant argues that there was evidence that the victim may have had a rubber mallet in his hand when he entered the station wagon, and that there was no evidence one way or another, whether or not the shot was fired in response to any specific conduct of the victim or his brothers.

The evidence cited was sufficient to put the issue of provocation before the jury, and the jury was properly instructed thereon. (CALJIC Nos. 8.40, 8.42, 8.44, 8.50.) There was, however, no evidence from which the jury could properly conclude that either the defendant or the slayer was "in danger of death or great bodily injury and that there [was] imminent danger of such a design being accomplished" at the time the shot was fired. (See CALJIC Nos. 5.12, 5.30, 5.50, 5.51.) Defendant argues that such a possibility was not negated by the evidence presented at trial. There must, however, be some affirmative evidence in support of the theory before an instruction is warranted. (*People* v. *Turville,* 51 Cal.2d 620, 632-633 [335 P.2d 678]; *People* v. *Haag,* 127 Cal.App.2d 93, 98 [273 P.2d 328].) In the absence of evidence of some real or apparent threat to defendant

or his friends at the time of the shooting, we must conclude that the trial court's refusal to instruct as to self-defense was proper.

3. Defendant assigns as error the instructions given the jury as to deliberate and premeditated murder and lying in wait. The court instructed the jury as to lying in wait in the language of CALJIC No. 8.25, with some modification. The major modification, requested by defendant, consisted of an admonition that the instruction was to be disregarded if it were not first determined that the crime be murder.[1] Defendant asks that we disregard the holding of *People* v. *Thomas,* 41 Cal.2d 470 [261 P.2d 1], and rule that a specific intent to kill must be independently shown for murder by lying in wait to be first degree murder.

Section 189 of the Penal Code defines first degree murder as "[a]ll murder which is perpetrated by means of a destructive device or explosive, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing . . ." Defendant urges that a distinction be drawn between poison and torture on one hand and lying in wait on the other, because the use of poison or torture is itself "an act extremely likely to produce death," while lying in wait is not, unless accompanied by an intent to kill.

Even if we were to agree with defendant in his subjective classification, the obvious answer must be that the Legislature clearly does not. Section 189 leaves no room for doubt. If the murder was perpetrated by means of lying in wait, it need not be independently determined to have been "willful, deliberate and premeditated." (*People* v. *Byrd,* 42 Cal.2d 200, 208 [266 P.2d 505]; *People* v. *Thomas,* 41 Cal.2d 470, 474 [261 P.2d 1]; *People* v. *McNeal,* 160 Cal.App.2d 446, 450-451 [325 P.2d 166].) The crime of which defendant was convicted was not lying in wait, but murder. If it was perpetrated by means of lying in wait it is, by definition, first degree murder. Defendant has offered no reason why such a definition is contrary to law, and none is apparent.

4. The trial court modified both the instruction as to lying in wait and as to deliberation and premeditation (CALJIC No. 8.20) in one further respect. In both, where the word "defendant" normally appears, the word "slayer" was substituted. Thus the jury was instructed that the killing was first degree murder if the *slayer* had a deliberate and premeditated intent to kill, and that it was first degree murder if the *slayer* was

---

[1]"You will note however, that before this instruction is applicable, you must find the crime involved to be, in fact, murder. In the event you have determined that the crime is not murder, you will disregard this instruction."

lying in wait. The jury was also instructed as to principals in the crime,[2] aiding and abetting,[3] and accomplices.[4]

Defendant assigns the court's modifications as error, contending that they permitted the jury to find him guilty of first degree murder without finding that he premeditated or deliberated (CALJIC No. 8.20), or that he shared with the slayer an intent to inflict upon the victim "bodily harm involving a high probability that it will result in death. . ." (CALJIC No. 8.25) even if he knew the slayer was "lying in wait." Defendant cites *Pinell* v. *Superior Court,* 232 Cal.App.2d 284 [42 Cal.Rptr. 676] for the proposition that to be responsible for the acts. of the actual killer, defendant must have shared the killer's intent. *Pinell,* in turn, relies on *People* v. *Hill,* 77 Cal.App.2d 287 [175 P.2d 45]. (*Pinell* v. *Superior Court, supra,* 232 Cal.App.2d at p. 287.) Both *Pinell* and *Hill,* however, are cases in which there was no evidence that the defendant was ever aware of criminal activity until it was substantially over, or that he participated knowingly. In the case at hand the evidence was sufficient for the jury to find that defendant led his friends to Burger Bill's with an intent to assault Jimmy and his brothers under certain circumstances. He clearly knew that his friends were armed with the bats and the rifle. Defendant is chargeable with the natural consequences of his acts and those that he knowingly aided and encouraged. (*People* v. *Durham,* 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *George,* 259 Cal.App.2d 424, 428-429 [66 Cal.Rptr. 442]; *People* v. *Madison,* 242 Cal.App.2d 820, 826-827 [51 Cal.Rptr. 851]; *People* v. *Belenger,* 222 Cal.App.2d 159, 163 [34 Cal.Rptr. 918]; *People* v. *Villa,* 156 Cal.App.2d 128, 133-135 [318 P.2d 828].) And "[w]hether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury." (*People* v. *Durham, supra,* 70 Cal.2d at p. 181, quoting *People* v. *Villa, supra,* 156 Cal.App.2d at pp. 133-134.) Because there is no question here as to the sufficiency of the evidence for the jury to find that defendant aided and encouraged the

---

[2]"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof." (CALJIC No. 3.00.)

[3]"A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime." (CALJIC No. 3.01.)

[4]"An accomplice is one who is liable to be prosecuted for the identical offense charged against the defendant on trial.

"To be an accomplice, the person must have knowingly and with criminal intent aided, promoted, encouraged, or instigated by act or advice, or by act and advice, the commission of such offense." (CALJIC No. 3.10.)

conduct which constituted first degree murder, the court was correct in its instructions on the defendant's liability for the killing.

5. Defendant complains that the jury should have been instructed as to second degree felony murder. The trial court properly excluded instructions offered by a codefendant on the reasoning of *People* v. *Ireland,* 70 Cal.2d 522, 539 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].

6. ■ Defendant contends that the jury sho ld have been instructed as to a conspirator's nonliability for acts not in fr :therance of the conspiracy. (CALJIC No. 6.16.) As noted above, the People prosecuted on a theory of aiding and abetting a principal in the commission of the crime, and defendant offered evidence to refute this theory. Neither the People nor defendant, however, argued that a conspiracy was involved. The jury was not instructed as to conspiracy at all. Since a conspiracy instruction would have been improper under any theory of the case, as charged and tried, the offered instruction was properly refused.

7. In his supplemental brief defendant argues that blacks were systematically excluded from the panel from which his jury was selected; that the court allowed improper rebuttal evidence against him; that the evidence is insufficient to support the verdict; and that the court erred in refusing to instruct on involuntary manslaughter.

Defendant's challenge of the venire was apparently denied by the trial court in the absence of any affirmative evidence of systematic exclusion, or any exclusion at all. On the basis of a bare allegation and in the absence of any evidence or offer thereof, this court is not in a position to undertake the investigation suggested by appellant. Upon a showing of systematic exclusion of blacks, appellant would be entitled to a new trial. (*People* v. *Hines,* 12 Cal.2d 535 [86 P.2d 92]; *People* v. *Frye,* 218 Cal. App.2d 799, 802 [32 Cal.Rptr. 699].) Appellant, however, must make the showing.

8. Defendant argues that certain statements made to the police by witnesses, and photographs of his lineup, should not have been admitted into evidence at his trial. The trial court determined that the statements of the witnesses were admissible after lengthy *voir dire* and argument. We find no error in that determination. The photographs to which defendant refers were admitted at trial without objection.

9. ∙■ Defendant claims that the baseball bat was the subject of an illegal seizure, and was improperly admitted into evidence. The testimony of the police indicates that the bat was not improperly seized and, in any event no objection to its admission was made at trial.

10. Defendant's claim that the court improperly refused to instruct the jury as to involuntary manslaughter (CALJIC No. 8.45) is adequately refuted by the record, which shows that that instruction was withdrawn by counsel for defendant.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.