[Crim. No. 10826. Fourth Dist., Div. Two. Jan. 16, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANTOINE MARTIN, Defendant and Appellant.

Counsel

Joseph Peter Myers, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**GARDNER, P. J.**—In this case we pick up a loose end left dangling by the Supreme Court in *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318].

In *Drew*, the Supreme Court jettisoned the traditional M'Naghten test of criminal insanity and in its place adopted subdivision (1) of the American Law Institute's (ALI) standard which specifies that: "... A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law."

However, the ALI test contains a second paragraph [Subdivision 2], commonly called the caveat paragraph, which provides: "... the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

In footnote 8 of *Drew, supra,* at page 345, the Supreme Court said that this language which is "... designed to deny an insanity defense to psychopaths and sociopaths, is not relevant to the present case. The question whether to adopt subdivision 2 of the ALI test is one which we defer to a later occasion."

In this case the issue is directly presented and we hold that subdivision (2) of the ALI test is appropriate in the proper case.

Defendant was convicted of one count of murder, one of attempted murder, four counts of robbery and one of burglary. Use and armed allegations were found to be true. On his plea of not guilty by reason of

insanity, he was found to have been sane at the time of the commission of these offenses.

A recitation of the facts is not essential to this aspect of our holding.

At the sanity phase, the doctors were in substantial agreement that the defendant was sane under the first paragraph of the ALI test but that he was a sociopath under the second paragraph.[1]

The court instructed the jury in the language of the second paragraph of the ALI test. Thus, the issue is clearly joined.

It can be said that subdivision (2) has been adopted as an integral part of the insanity standard by most jurisdictions that have adopted the ALI test.[2]

---

[1]The nomenclature changes from time to time. Once these individuals were known as psychopaths, then as psychopathic personalities, then as sociopaths, then as sociopathic personalities, then sociopathic behavior problems. Regardless of label, they are well known to the administration of criminal justice, forming the reluctant fodder of that system—impulsive, selfish, irresponsible, seemingly having no sense of right or wrong, incapable of any real emotional relationship with others, always in trouble, never profiting from experience, sharing none of life's usual loyalties and totally lacking in respect for the rights of others. Since they are incapable of learning from experience, they constitute an uncomfortably high percentage of our criminal defendants—the recidivists.

[2]Subdivision (2) has been adopted by the Second, Third, Fourth, Fifth, and Seventh Circuits, *United States* v. *Freeman* (2d Cir. 1966) 357 F.2d 606, 625; *United States* v. *Currens* (3d Cir. 1961) 290 F.2d 751, 774, footnote 32 (Biggs, C. J.); *United States* v. *Chandler* (4th Cir. 1968) 393 F.2d 920, 929 (en banc); *Blake* v. *United States* (5th Cir. 1969) 407 F.2d 908, 915 (en banc); *United States* v. *Shapiro* (7th Cir. 1967) 383 F.2d 680, 686 (en banc); The Sixth and Ninth Circuits have rejected subdivision 2: *United States* v. *Smith* (6th Cir. 1968) 404 F.2d 720, 727, footnote 8; *Wade* v. *United States* (9th Cir. 1970) 426 F.2d 64, 72-73 (seven-to-six en banc decision). The District of Columbia Circuit has accepted subdivision 2 as a rule of evidence but not as a jury instruction in order to avert possible confusion resulting from that court's definition of "mental disease." (*United States* v. *Brawner* (D.C. Cir. 1972) 471 F.2d 969, 993-994 (en banc).) Other circuits have not ruled definitively.

Subdivision 2 has been enacted by statute in Alaska (Alaska Stat., § 12.45.083, subd. (a) and (b)); Connecticut (Conn. Gen. Stat., § 53a-13); Illinois (Ill. Ann. Stat., ch. 38, § 6-2 Smith-Hurd); Maine (Me. Rev. Stat. Ann. tit. 17-A, § 58); Maryland (Md. Ann. Code, art. 59, § 25); Montana (Mont. Rev. Codes, § 95-501); Oregon (Ore. Rev. Stat., 161.295); Texas (Tex. Pen. Code, § 8.01); and Vermont (Vt. Stat. Ann., tit. 13, § 4801); and judicially adopted in Alaska, *Schade* v. *State* (Alaska 1973) 512 P.2d 907, 911-912; Indiana, *Hill* v. *State* (1969) 252 Ind. 601 [251 N.E.2d 429, 436-437] and Wisconsin, *State* v. *Shoffner* (1966) 31 Wis.2d 412 [143 N.W.2d 458, 465] and, apparently, in Idaho, *State* v. *White* (1969) 93 Idaho 153 [456 P.2d 797, 800]; Kentucky, *Terry* v. *Commonwealth* (Ky.App. 1963) 371 S.W.2d 862, 865; Massachusetts, *Commonwealth* v. *McHoul* (1967) 352 Mass. 544 [226 N.E.2d 556].

The authors of the ALI test concluded that subdivision 2 was an essential part of its proposed standard for determining criminal responsibility. The drafters' comment says: "Paragraph (2) of section 4.01 is designed to exclude from the concept of 'mental disease or defect' the case of so-called 'psychopathic personality.' The reason for the exclusion is that, ... psychopathy is a statistical abnormality; that is to say, the psychopath differs from the normal person only quantitatively or in degree, not qualitatively; and the diagnosis of psychopathic personality does not carry with it any explanation of the causes of the abnormality."

Whether we should adopt subdivision (2) is a public policy decision. Are we to relieve from responsibility from criminal acts those who have no mental disease or defect but who have nevertheless established a pattern of antisocial behavior amounting to "an abnormality manifested only by repeated criminal or otherwise antisocial conduct"? If so, we open the floodgates since most of our criminal recidivists fit the pattern. The social order simply cannot tolerate excluding deliberate and persistent offenders from responsibility from criminal action sans diagnosable mental disease or defect. An alternative holding would be absurd.

We cannot improve upon the statement of policy set forth in *United States* v. *Freeman* (2d Cir. 1966) *supra*, 357 F.2d 606, 625, when that court adopted subdivision (2) of the ALI test. "And lest our opinion be misunderstood or distorted, some additional discussion is in order. First, we wish to make it absolutely clear that mere recidivism or narcotics addiction will not *of themselves* justify acquittal under the American Law Institute standards which we adopt today. Indeed, the second clause of Section 4.01 explicitly states that 'the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.' We approve and adopt this important caveat.

"There may be instances where recidivists will not be criminally responsible, but this will be for determination in each individual case depending upon other evidence of mental disease augmenting mere recidivism with the ultimate determination dependent upon the proper application of the standards we have adopted. But, we stress, repeated criminality cannot be the *sole* ground for a finding of mental disorder; a contrary holding would reduce to absurdity a test designed to encourage full analysis of all psychiatric data and would exculpate those who knowingly and deliberately seek a life of crime." (Italics in original.)

We reject defendant's argument that subdivision (2) is unnecessary in California because of the existence of this state's civil commitment programs.

The Lanterman-Petris-Short Act provides for civil commitment of a person who "as a result of mental disorder, [is] a danger to others, or to himself, or gravely disabled." (Welf. & Inst. Code, § 5150.) Defendant, as a sociopath, falls into none of these categories. It is essential that the sociopath be excluded from the definition of mental disease or defect.

■ Neither is there an equal protection problem. Equal protection is not offended since sociopathy is not a suspect classification and the state has a compelling interest in public safety. (See *Conservatorship of Hofferberg* (1980) 28 Cal.3d 161 [167 Cal.Rptr. 854, 616 P.2d 836].)

One final observation seems in order. As the court said in *United States* v. *Chandler* (4th Cir. 1968) 393 F.2d 920 at page 929, "The criminal law exists for the protection of society . . . [s]hould the law extend its rule of immunity . . . to all those persons for whose deviant conduct there may be some psychiatric explanation, the processes of the law would break down and society would be forced to find other substitutes for its protection."

■ Thus we hold that in the appropriate case it is proper to instruct in the language of subdivision 2 of the ALI test. This does not mean it must be given in every case. Whether or not to give it will be left in the sound discretion of the trial court and will depend upon the state of facts presented to that court.

The balance of this opinion discusses issues without precedential value which may be briefly disposed of.

The facts are that on August 18, 1977, Mr. Frazer's car was hit by the defendant's car. The Frazer family was robbed. The defendant was armed, as was his companion. The defendant and his companion got into their car and as they passed the Frazer car, defendant fired a shot into Mr. Frazer's headrest which came within an inch of Mr. Frazer's head.

Then on August 21, 1977, Mr. Sam stopped to help a Pinto which was on the side of the road with its hood raised. Mr. Sam was then

robbed by the defendant and his companion. Mr. Sam was then shot and killed by defendant's companion.

Defendant's defense was that he used PCP the day of the crime.

His contentions are as follows: (1) That the jury was improperly instructed on felony murder on the issue of whether the robbery was still in progress when Mr. Sam was killed. We do not agree.

■ The jury was instructed in the language of CALJIC Nos. 8.21 and 8.27 which cover the situation. Redundant instructions on this issue were properly rejected as was a request that the jury be instructed in the language of Penal Code section 189. CALJIC Nos. 8.21 and 8.27 correctly advise the jury as to the application of the felony-murder rule to the issue of whether the robbery was still in progress at the time of the killing.

■ (2) That the court erred in deleting from CALJIC No. 3.01, which defines aiding and abetting, a bracketed portion which is based on *Pinell* v. *Superior Court* (1965) 232 Cal.App.2d 284 [42 Cal.Rptr. 676].

The *Pinell* addition to CALJIC No. 3.01 is applicable when there are no facts showing participation in the crime or encouragement to others to commit the crime. Here, the defendant planned the robbery with his codefendant and directly participated in the robbery during which Mr. Sam was killed.

■ (3) That it was prejudicial error to admit photographs of the victim's body.

These matters are addressed to the discretion of the trial court. The photographs were probative and while unpleasant were hardly inflammatory. (See *People* v. *Long* (1974) 38 Cal.App.3d 680 [113 Cal.Rptr. 530].)

■ (4) That the victim's widow and mother should not have been called as witnesses.

In the first place, they were called without objection, and, in the second place, they gave relevant testimony. The fact that they were the

victim's wife and mother does not render them incompetent as witnesses.

■ (5) That Evidence Code section 522 which places the burden of proof of insanity upon the defendant is unconstitutional.

Unfortunately for the defendant, *People* v. *Drew, supra*, 22 Cal.3d 333, 348-349, ruled to the contrary.

■ (6) That the sanity jury may have assumed that the guilt phase jury found a specific intent for murder on the part of the defendant and therefore concluded it could not redetermine the defendant's mental state.

This is a nonissue.

The jury's verdict forms clearly stated they determined the defendant was sane. They were told that their determination was as to whether the defendant was sane. They were fully instructed on the issue. It would have been confusing to receive the felony-murder rule instructions that only relate to guilt. There is no showing that the jury misunderstood its task.

Judgment affirmed.

McDaniel, J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 29, 1981. Bird, C. J., was of the opinion that the petition should be granted.