[Crim. No. 18970. First Dist., Div.Two. Dec. 11, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY E. PERRY et al., Defendants and Appellants.

[Crim. No. 19800. First Dist., Div. Two. Dec. 11, 1979.]

In re STANLEY E. PERRY on Habeas Corpus.

**COUNSEL**

Richard E. Neuman, and Lawrence F. Salisbury, under appointments by the Court of Appeal, for Defendants and Appellants and for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Tiffany Rystrom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BARBER, J.*—On Sunday, July 23, 1978, at approximately 11:30 a.m., a San Francisco residence was burglarized while the occupants were on a weekend camping trip. Four suspects, including appellants Donna M. Lewis and Stanley E. Perry, were apprehended near the scene of the crime, and charged with burglary (Pen. Code, § 459), a felony. Perry was also charged with receiving stolen property, a violation of Penal Code section 496. The appellants pleaded not guilty, and a jury trial thereon was commenced on September 25, 1978. The jury found both appellants guilty of burglary in the second degree, and found Perry not guilty of the alternative charge of receiving stolen property. Their motions for new trials were denied, and each was sentenced to state prison on October 25, 1978. Each has appealed, and Perry has also filed a petition for a writ of habeas corpus which has been consolidated with his appeal.

On the morning of the burglary, Miss Gloria Harn looked out of her living room window and saw an old green station wagon bearing the license WHH 441 come to a stop in front of 6 Mateo Street in San Francisco. Miss Harn's view of the stopped vehicle was partially blocked by foliage. The only part of the interior visible to her was the driver's seat, which was occupied. Miss Harn testified that she saw two black men get out of the car and approach the house at 6 Mateo Street. They disappeared inside the house for 5-10 minutes while the driver remained in the vehicle parked in front of the residence.

When the two men reappeared, one handed a guitar and clothing out of a window to the other. At that moment two marked police cars stopped at an intersection one block away, whereupon the two men pushed the items back through the window into the house and disappeared inside the house again. After a few seconds, the two police cars left the intersection and disappeared from Miss Harn's view. At this point, the station wagon pulled away from the curb and drove down Mateo Street away from Miss Harn.

The eyewitness then reported this suspicious activity to the police by telephone, and gave them the license number of the green station wagon. Miss Harn was unable to identify any of the defendants as a person she had seen on the morning of the crime.

*Assigned by the Chairperson of the Judicial Council.

At approximately 11:35 a.m. on the day of the burglary, Officers Moore and Buckley of the San Francisco Police Department were in a patrol car when they received a police radio report that a black man carrying a tire iron and suspected of auto boosting had been reported in the area where Miss Harn resided. The same broadcast gave the description and license number of the green station wagon, but did not report it as having been used in a burglary, nor did it mention anything about the men who had left the vehicle to enter the house at 6 Mateo. Shortly after the radio report, Buckley and Moore saw Lewis driving the suspect vehicle slowly along Laidley Street, two or three blocks from where it had been parked. Buckley pulled his patrol car in front of the oncoming station wagon and forced it to a stop. He advised Lewis of the radio report and she told him that she had picked up three men who had asked her for a ride and, at their request, had dropped them off on the street behind her.

Officer Wohler, riding alone in another patrol car, responded to the same radio report. As he approached the area he saw that Buckley and Moore had stopped the station wagon, and without communicating with Buckley or Moore he proceeded on in search of the man with the tire iron. Upon turning from Roanoke Street into Bemis Street, Wohler saw three black men walking closely together toward him. Two of them (co-defendants Thomas and Cintron) were walking abreast, and Perry was slightly behind them. Thomas was carrying a television set and some clothing, Cintron was carrying a guitar over his shoulder, and Perry was carrying a leather bag (sometimes referred to by Wohler in his testimony as a purse). Although there had been no radio report yet of a suspected burglary and he had not known of Lewis' statement to Buckley about dropping three men on Mateo Street, Wohler immediately reported by radio that he had three "possible burglary suspects" in view and gave their direction of travel. Wohler kept the three men in view as he drove toward them, and he saw Thomas place the television set on the ground and he and Cintron increased their pace and Perry seemed to slow his. The officer turned his patrol car around and followed the three men. Buckley and Moore heard Wohler's broadcast and stationed themselves on Laidley Street near the corner of Bemis Street. When Thomas and Cintron rounded the corner, they were detained by Buckley and Moore, and at the same time Wohler stopped Perry. Wohler testified that when he stopped Perry he took the leather bag from him, found it to be heavy and loaded with a lot of tools, and that there was a shirt in it covering the tools. He further testified that Perry told him

that the purse belonged to his wife. After Wohler had placed Perry in his patrol car, the police radio broadcast the burglary report called in by Miss Harn.

The officers contacted Miss Harn who pointed out the burglarized house to them and described witnessing the men enter the house and proceed to push a guitar and some clothing out of the window. Some of the officers then entered the·burglarized residence, which appeared to have been ransacked. A cable television box lay on the floor but no television was attached. After a fruitless attempt to contact the homeowners, the officers left and took the suspects to the Ingleside police station. The items that Thomas, Cintron and Perry had in their possession when they were arrested were later identified as the belongings of Rachman Cantrell,. the occupant of the burglarized house.

Lewis seeks reversal of the judgment below on two grounds: 1) that the verdict is not supported by substantial evidence, and 2) that the trial judge committed prejudicial error in refusing to instruct the jury on her "mere presence" defense theory.

Perry contends his judgment should be reversed because he was denied his constitutional right to effective assistance of counsel, and the trial judge committed prejudicial error in his instructions to the jury. Perry's petition for a writ of habeas corpus reiterates the inadequate representation arguments.

We turn our attention to the first issue raised by appellant Lewis: Is there any substantial evidence in the record to support the jury's verdict finding her guilty of burglary in the second degree (Pen. Code, § 459) as an aider and abettor in the commission of the burglary (Pen. Code, § 31).

Lewis correctly states that the test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]). This court must view the evidence on record in the light most favorable to the respondent, and presume in support of the judgment every fact which the trier could reasonably deduce from the evidence (*People* v. *Reilly, supra*). Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the jury's verdict, it must be clearly

shown that on no hypothesis whatever is there sufficient substantial evidence to support it (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]).

A reviewing court cannot be blind to the quality of the evidence marshalled in support of a jury's verdict, and in a criminal case, substantial evidence means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility, and inspires confidence that the ultimate fact it addresses has been justly determined (*People* v. *Bassett* (1968) 69 Cal.2d 122, 137 [70 Cal.Rptr. 193, 443 P.2d 777]).

██ Lewis stated upon first being detained that she had given three men a lift in the station wagon and dropped them off at Mateo Street. When her vehicle was first seen by Buckley and Moore, she was driving slowly near the scene of the crime. Lewis asserts that she was merely an innocent and generous motorist who had unwittingly given burglars a lift to their target. The obvious flaw in this theory is the duration of time spent by her at the scene of the crime. Miss Harn testified that the station wagon remained next to 6 Mateo between 10 and 15 minutes while 2 men entered the house and later began to shove personal property out of a window. Lewis only pulled away from the scene when the police cars appeared at the intersection a block away from the burglary. Lewis did not testify at the trial and presented no witnesses on her behalf.

Lewis seeks to discredit Miss Harn's testimony by pointing out that the witness changed her testimony as to the time Lewis spent in front of the house. At the preliminary hearing, the witness, in response to defense counsel's question of how long Lewis stayed in front of the residence, stated that she couldn't really say. At trial, the witness estimated the time to be 10 to 15 minutes, and elsewhere in her trial testimony she fixed the time at 5 to 10 minutes. On cross-examination, she estimated that she phoned the police two or three minutes after the men entered the house and that the station wagon left before she phoned. It was argued before the jury, and is now argued before us, that these inconsistencies show the witness is untrustworthy. We disagree.

Miss Harn did not clock the time of her observations and she made it clear that the stated time periods were only estimates. We cannot see a

crucial difference between an estimate of 5 minutes rather than 10 or 15 minutes that the vehicle remained in front of the house. The uncontradicted evidence established that the car was parked at the scene while the burglars forced open and entered by the front window of the residence and began to push property out of it and left only when police cars appeared. Whether this time period amounted to 5 or 10 minutes is immaterial. If Lewis stopped the car for even three minutes, that would refute her hearsay declaration that she merely dropped the men off. The People can properly rely on circumstantial evidence to connect Lewis with the crime charged and to establish beyond a reasonable doubt that she aided and abetted the burglary (*People v. Reilly, supra*, 3 Cal.3d at p. 424). We are satisfied that the jury's verdict is supported by substantial evidence.

■ Lewis' second ground for reversal of her conviction is that the trial judge committed prejudicial error in refusing her requested "mere presence" instruction.[1]

■ Whether requested or not, a trial court is required to give instruction on the legal principles that are relevant to the issues raised by the evidence in a criminal action (*People v. Smith* (1978) 78 Cal. App.3d 698, 708 [144 Cal.Rptr. 330]). The general principles of law governing the case are those closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case (*People v. St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]).

■ Lewis' "mere presence" theory (see *Pinell v. Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676]) is based solely on her ready explanation to the police of the circumstances that had brought her to the neighborhood. Except for that declaration, elicited by her counsel on his cross-examination of Buckley over the objection of the prosecutor, the record is wholly devoid of any evidence to support her theory. The proposed instruction correctly states the law, and, having admitted the testimony, the trial court probably erred in refusing the instruction. The fact that the evidence is not of a character to inspire belief does not authorize the refusal of an instruction based thereon (*People v. Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]). However, a reading of the entire record compels us to the conclusion

---

[1]*The requested instruction was:* "Mere presence at the scene and failure to take steps to prevent a crime do not establish aid and abetting." (See CALJIC (4th ed. 1979) No. 3.01, bracketed material.)

that the error could not have prejudiced her rights and does not justify a reversal of the judgment (Cal. Const., art. VI, § 13; *People v. Eggers* (1947) 30 Cal.2d 676, 687-688 [185 P.2d 1]; *People v. Nunez* (1970) 7 Cal.App.3d 655, 662 [86 Cal.Rptr. 707]).

Perry's primary contention on appeal is that he was deprived of his constitutional right to effective assistance of counsel at trial (Cal. Const., art. I, § 15; *People v. Ibarra* (1963) 60 Cal.2d 460, 464-465 [34 Cal.Rptr. 863, 386 P.2d 487]), in that his court-appointed defense counsel failed to present or preserve his only potentially meritorious defense.

The burden of proving a claim of inadequate trial assistance is on appellant (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859]), and he must show that his trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a crucial or potentially meritorious defense (*People v. Pope, supra*).

Perry's argument of inadequate representation finds its strongest foothold in his counsel's failure to move to suppress or object to the introduction of evidence showing Perry's possession of stolen property at the time of his detention and arrest. He claims that such evidence was the fruit of an unconstitutional search and seizure and a reasonably competent and diligent defense counsel would have made a suppression motion in the circumstances of this case.

Perry's conviction rests on the evidence that he was found to be in possession of property taken from the burglarized house within minutes after the burglary. There is no direct evidence that he was one of the men who entered the residence or that he aided or abetted the commission of the burglary. If the evidence of his possession of stolen property had been excluded as the product of an illegal search and seizure (Pen. Code, § 1538.5) at the preliminary hearing or at trial, the People's case against Perry would have been seriously undermined. The failure to make such a suppression motion or to object to this evidence at trial deprived Perry of the adjudication of a potentially meritorious defense. Whether Perry was deprived of adequate representation by defense counsel's failure to invoke this potentially meritorious defense will turn on the merits of the claim that such evidence was the fruit of an illegal search and seizure and, consequently, inadmissible.

Our attention turns first to the legality of Perry's detention. ■ It is settled law in California that circumstances short of probable cause for an arrest may justify a police officer in stopping and briefly detaining a person for questioning or other limited investigation (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *Terry* v. *Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868]). But "in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so. . ." (*In re Tony C., supra*, at p. 893).

■ Perry's detention by Officer Wohler was clearly the result of Wohler's subjective belief that some criminal activity—a burglary—had occurred. This is evident from his broadcast of having encountered three possible burglary suspects when he observed the men on Bemis Street carrying the various items of personal property. Had Wohler detained any of these men merely on this observation alone, such a detention would not have been legal—there were no specific or articulable facts causing reasonable suspicion that such activity related to a crime (*In re Tony C., supra*, 21 Cal.3d at p. 893). Wohler was in this area in response to a broadcast concerning a green station wagon and a black man with a tire iron suspected of possible car boosting. Wohler saw the station wagon being detained in the neighborhood by the other officers, but had not communicated with Lewis or the officers, and could not have known of her statement that she had dropped some men off in the area. At that point his belief that the men were probably burglars was no more than a hunch.

There is no evidence in the record that Bemis Street was in a high-crime area (see e.g., *Flores* v. *Superior Court* (1971) 17 Cal.App.3d 219, 223 [94 Cal.Rptr. 496]), that the men were transporting these goods in the rain (see e.g., *People* v. *Manis* (1969) 268 Cal.App.2d 653 [74 Cal.Rptr. 423]), or that the men took flight on seeing the patrol car. However, Perry's detention did not occur at that point. Wohler drove towards the three men, and as he was on the verge of passing them, one of the men, codefendant Thomas, abandoned the television

on the sidewalk. Two of the men began to quicken their pace, while Perry slowed his. Wohler observed this activity before he stopped Perry. Thomas' act of abandoning the television on the sidewalk as the police car pulled alongside of them, together with the quickening of pace by two of the men are the required "specific and articulable facts" which justified detaining them for limited investigation. While Perry sought to separate himself from the others by slowing down, it was reasonable to treat him as part of the group, and his detention was lawful. Yet the subsequent search of the leather bag and the consequent discovery of the stolen property are of doubtful legality.

It appears that Wohler's opening of the leather bag was a warrantless search, and therefore the People would have to carry the burden of proving that such police conduct was justified (*Badillo v. Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]).

Clearly, there was no probable cause to arrest Perry before the tools were discovered, and it appears that he was not arrested until after the bag had been searched. A warrantless search cannot be justified by facts which were not known by the officer at the time (*People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 198 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People v. Huff* (1978) 83 Cal.App.3d 549 [147 Cal.Rptr. 316]). The search was not incident to Perry's arrest. It could be justified at that point, if at all, only by Wohler having had a reasonable belief that Perry was an armed and dangerous individual, and that his safety was in jeopardy (*People v. Lawler* (1973) 9 Cal.3d 156, 161 [107 Cal.Rptr. 13, 507 P.2d 621]). There is no evidence in the record to indicate that Wohler feared that Perry carried a weapon or that he was even patted down.

The details of Perry's detention and search of the leather bag are not fully set out in the record, and, accordingly, further evaluation of the legal validity of the search cannot be made by us. However, the legality of Wohler's search and seizure of the leather bag and its contents is not the issue presented on Perry's appeal, but whether a reasonably competent attorney, acting as a conscientious diligent advocate, would have tried to suppress the highly prejudicial evidence produced against Perry as a result of his detention and the search of the bag. The facts and the law pertinent to the present case indicate to us that Perry had a reasonable chance of excluding this evidence by a motion made pursuant to section 1538.5 of the Penal Code. The failure of his counsel to make

such a motion or object to the introduction of this evidence at trial, may have resulted in the withdrawal of a potentially meritorious defense. ▪ Failure of defense counsel to make appropriate motions for the suppression of damaging evidence constitutes a denial of defendant's constitutional right to effective assistance of counsel (*People* v. *Farley* (1979) 90 Cal.App.3d 851 [153 Cal.Rptr. 695]). "[A] defendant is denied the effective assistance of counsel if, by reason of counsel's failure to perform the obligations imposed upon him, defendant is deprived of an *adjudication* of a crucial or potentially meritorious defense. It is not required that defendant establish that the adjudication would *necessarily* be in defendant's favor." (*People* v. *Farley, supra,* at p. 865.)

We have searched the record without success to find any reason for defense counsel not to have moved to suppress the evidence of the property found in Perry's possession. Except for ineffective attempts on cross-examination to discredit the victim's identification of the contraband as his property and to discredit Officer Wohler's recollection that he saw or found the bag in Perry's possession, the only evidence offered by way of Perry's defense was an attempt to introduce testimony that codefendant Thomas had told his attorney in advance of the preliminary hearing, in the presence of another inmate, that he (Thomas) was going to plead guilty, that he wanted "to cut Mr. Perry loose," and that "Mr. Perry had nothing to do with that." Perry's counsel argued that such testimony was admissible because it was a declaration against the interest of Thomas. Thomas had pleaded guilty before the trial commenced but had not been sentenced yet. Thomas was called by Perry to testify but, with advice of counsel, exercised his Fifth Amendment privilege. Mr. Letner, the inmate who assertedly overheard Thomas' statement to his attorney, was also called but the trial court properly sustained the prosecution's objection to the offer of the exculpatory portion of such hearsay statement which was not disserving to the interests of the declarant (Evid. Code, § 1230; *People* v. *Leach* (1975) 15 Cal.3d 419, 441 [124 Cal.Rptr. 752, 541 P.2d 296]). The jury had already been told that Thomas had pleaded guilty to second degree burglary.

Given such a state of the record it is questionable that a reasonably competent defense attorney would allow Perry's case to go to trial without a suppression motion. Making such a motion unsuccessfully could in no manner adversely affect any other possible defense or any trial strategem; there was no other defense to the overwhelming circumstantial evidence of his guilt. In the case of *People* v. *Ibarra, supra,* 60 Cal.2d 460, 466, the failure to object to introduction of the product of a ques-

tionable search and seizure, even though done under a mistaken belief of law, was held to have reduced the trial to a farce and a sham.

Perry asserts that his counsel's failure to object to two hearsay declarations also deprived him of the effective assistance of counsel. Miss Harn had testified to seeing two men leave the vehicle and enter the house. After her testimony had been completed and she had been excused as a witness, the prosecution introduced through Officer Wohler's testimony that in his investigation of the crime, Miss Harn had told him that she saw three men. The second hearsay testimony that Perry asserts should have been objected to by his counsel occurred while Lewis' counsel was cross-examining Officer Buckley and while the prosecutor, Mr. Eisenberg, questioned him on redirect. On cross-examination, Lewis' counsel (over the objection of Eisenberg but not of Perry's counsel) elicited from Buckley that Lewis had told him upon being stopped that "she had picked up some men and she had dropped them off on the next street back. . . ." Upon redirect Eisenberg asked, without objection, how many men she said she had dropped off, and the witness responded "Three." Each of those items of testimony was hearsay and objectionable as to Perry. However, failure to object to them is not necessarily proof of inadequate representation. Such conduct does not fall within those basic duties that an attorney in a criminal case must perform in order to render reasonably competent counsel (*People* v. *Pope, supra*, 23 Cal.3d at pp. 424, 425), and the failure to object may have been justified.

Although the record before us does not disclose any reason for trial counsel not to have moved to suppress certain evidence or to object to damaging hearsay testimony, it does not dictate a reversal of Perry's conviction. The evidence is more than sufficient to establish his guilt and, as in the *Pope* case, *supra*, the record here includes neither an explanation as to why trial counsel did not make the suppression motion or object to the hearsay testimony, nor any indication that he was asked for an explanation (23 Cal.3d, at p. 428). There may have been facts not disclosed by the record on appeal which would provide a proper reason for trial counsel's conduct. As in the *Pope* case, also, we conclude that the matter is best resolved by affirming the conviction and allowing Perry to proceed to present such evidence as he can in support of his claim of inadequate representation at a hearing on a petition for writ of habeas corpus in the trial court.

■ Perry also claims that the trial court judge committed prejudicial error in his instructions relative to the charges of burglary and possession of stolen property. After instructing the jury in the exact language of CALJIC No. 17.03 to the effect that charges were in the alternative and that if the jury found Perry guilty of one they had to find him not guilty of the other, the court offered an explanation of it, as follows: "In other words, ladies and gentlemen, with reference to the Defendants Perry and Cintron, they are charged in the alternative, and can only be convicted of one of the offenses. [¶] You must agree as to which offense they committed, if you find them to be guilty. [¶] If you find them guilty of one of the offenses, you should find them not guilty of the other. [¶] If you have any questions concerning how to make out the verdicts, should that be your decision in this case, simply ask and I will try to explain it to you. [¶] Of course, this does not preclude the fact that you have the option of finding them not guilty as to one or both of the charges." The explanation is attacked as unduly emphasizing the words "guilty" and "conviction" and as being confusing. We do not agree. The explanation may be unnecessary, but it was not unfair to the defendants. The jury was clearly informed that they were free to find either or both defendants not guilty of both offenses.

Each of the judgments is affirmed. Perry's petition for writ of habeas corpus is denied without prejudice to his seeking the same relief in the trial court.

Taylor, P. J., and Rouse, J., concurred.

Petitions for a rehearing were denied January 2, 1980, and February 1, 1980, and the petition of appellant Perry for a hearing by the Supreme Court in No. 18970 was denied February 27, 1980.