Filed 4/29/26  P. v. Guerrero CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ELIZABETH GUERRERO,<br><br>　　Defendant and Appellant. | C100948<br><br>(Super. Ct. No. 20FE012020) |

Defendant Elizabeth Guerrero appeals a judgment following her conviction by jury for second degree burglary (Pen. Code, § 459),[1] receiving stolen property (§ 496, subd. (a)), and misdemeanor vandalism (§ 594, subd. (a)).  She contends insufficient evidence supports these convictions, and the trial court erred in failing to sua sponte instruct the jury with the bracketed portion of CALCRIM No. 401 on "mere presence."  We conclude that defendant was not prejudiced by the complained-of instructional error; however, our review of the record has disclosed the trial court prematurely issued an

---

[1] Undesignated statutory references are to the Penal Code.

1

abstract of judgment.  We will direct the trial court to vacate the premature abstract filed on April 19, 2024, and will affirm.

## I.  BACKGROUND

The People's Information charged defendant with aiding and abetting second degree burglary (§ 459—count one); receiving stolen property (§ 496, subd. (a)—count two); misdemeanor vandalism (§ 594—count three); and resisting, delaying or obstructing an officer (§ 148, subd. (a)(1)—count four).

*A.     The People's Case*

In July 2020, Sacramento Police Officer Nalee Moua was dispatched to an automotive shop following the report of motion detector alarm, arriving within a few minutes.  Upon arrival, she noted a black Toyota parked behind the building and another car parked at one of the car wash stations.  Defendant was standing next to the black Toyota on the passenger side, and a male companion appeared to be working with a spare tire.  The front doors to the business were locked, the business was closed, and Officer Moua did not see anyone inside.  The individual washing his car directed the officer's attention to the back of the business, and the officer noted that defendant had moved and was seated in the driver's seat of the black Toyota with the door open.  Her two male companions were on the passenger side of the vehicle.  Officer Moua's bodycam footage was played for the jury and showed defendant seated in the driver's seat speaking with the officer.  One of the male companions placed items in the trunk and tried to close it.

As Officer Moua approached, she asked what they were doing, and defendant told her their car had just broken down with a tire problem.  One of defendant's male companions stated it had happened within the last 10 minutes.  The Toyota's registration did not match anyone at the scene, but one of the male companions stated he and his girlfriend had taken over the payments.  Numerous items from the automotive shop were discovered in the trunk.  More items from the automotive shop were scattered in the parking lot, including a trail leading to the Toyota.  A latent print lifted from one of the

2

automotive shop rolling doors matched one of defendant's companions. A toolbox that should have been inside the shop's office was located approximately 50 feet from the Toyota. Another toolbox containing approximately $15,000 worth of tools was never recovered. There was no surveillance video.

M.I. worked for the automotive shop as a mechanic and reported to work early on the day of the burglary after authorities called him. One of the back doors that is locked each night had been pried open, and items worth approximately $25,000 had been taken. M.I. told Sacramento Police Officer Kyle McCloskey that the items in the car belonged to him. Officer McCloskey inventoried items from the front driver area, the rear passenger area, and the trunk.[2] Photos of the stolen items, including those items in the car were presented to the jury.

Sacramento Police Officer Alicia Pangelinan was dispatched to the automotive shop on the day of the burglary to assist in detaining individuals. Officer Pangelinan placed defendant in the back of her patrol car without handcuffs. She left defendant and went to assist with searching the building.[3] When she returned, Officer Pangelinan noted wires sticking out from the floorboard of her patrol car, which was not normal and had not been the condition of the car when she took it out that day. Review of her body camera footage confirmed the wires were not sticking out when defendant was originally placed into the car. The wires should have been connected to the rear in-car camera, which is used to keep an eye on individuals in the backseat. The camera no longer worked, and defendant was transferred to a new car. Photos of the damaged wires in the

---

[2] These items included oil filters, air filters, a welder, brake pads, other car parts, and a starter in the passenger area. More brake pads, air filters, other car parts and a water pump were located in the driver's area. The trunk held similar items. Multiple car rims with tires were also inside the car.

[3] Body camera footage including the suspected point of entry for the burglary was played for the jury.

back of the officer's car were shown to the jury. Officer Pangelinan believed defendant pulled the wires out because she was not handcuffed. When repairs are needed on patrol cars, dispatch arranges them. A video of Officer Pangelinan attempting to handcuff defendant following the discovery of the damage was also played for the jury.

B.      *Defendant's Case*

Defendant testified that the events on the day of the burglary were "fuzzy" because she had taken two and one-half "Xanax bars," drank a six pack, and had fallen asleep. She did not know her male companions well, describing them as friends of friends. Nonetheless, she got into the black Toyota the night before and woke up that morning when the car was stopped, and the car felt uneven. She had been waiting for her friend to pick her up from the car. She remembered being arrested but did not recall her booking or being in jail. She denied knowing that her companions intended to burglarize the business.

On cross-examination, defendant testified she had been picked up by her companions, but that there had been other people in the car too. The group had driven around, and she passed out from the drugs around 3:00 a.m. She conceded the video showed her standing by the car and then seated in the driver's seat, but she professed no memory of it. Defendant had no memory of speaking to the officer either. Defendant did not recall the window to the business breaking, the items being loaded into the car, or seeing anything being burglarized, stating she had been sleeping. Defendant testified she was not raised to be a thief and was impeached with her prior petty theft conviction. Finally, defendant did not recall interacting with the officers or tampering the wires in the back of the patrol car despite the video evidence.

C.      *The Verdicts and Sentence*

The jury found defendant guilty of counts one through three, but not guilty of count four. In April 2024, the trial court suspended imposition of sentence and ordered defendant to two years formal probation. Nonetheless, the record shows the trial court

4

prematurely issued an abstract of judgment stating defendant was sentenced to prison. Defendant timely appealed.

## II.  DISCUSSION

Defendant brings challenges to the sufficiency of the evidence supporting each of her convictions, as well as a claim of instructional error.  We first address the sufficiency arguments and then proceed to her remaining argument.

*A.*     *Defendant's Substantial Evidence Challenges*

Defendant complains substantial evidence does not support her convictions for burglary, receiving stolen property, and vandalism.  We will address each of her arguments in turn.

In determining a sufficiency of the evidence challenge, we "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' " (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, italics omitted.)  "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  In other words, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055, italics omitted (*Nguyen*).)  The standard is the same in cases in which the People rely primarily on circumstantial evidence.  (*People v. Bean* (1988) 46 Cal.3d 919, 932.)  " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing

5

court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*Id*. at p. 933.)

### 1. The Burglary Conviction

Defendant complains insufficient evidence supports her conviction for burglary arguing her mere presence at the scene neither established she committed nor aided and abetted second degree burglary. Defendant would have this court ignore the People's evidence and instead rely on her testimony that she awoke at the scene in a drug induced haze and did not recall anything.[4] This misapprehends our task on appeal.

Burglary is established by showing the unlawful entry to a locked structure with the intent to commit a felony therein. (See, e.g., § 459; CALCRIM No. 1700; *People v. Holt* (1997) 15 Cal.4th 619, 669). The requisite intent may be proven with circumstantial evidence. (*Holt, supra*, at p. 669.)

" 'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, and (3) by act or advice aids, promotes, encourages or instigates the commission of the crime." ' " (*Nguyen, supra*, 61 Cal.4th at p. 1054.) Whether a person has aided and abetted a crime is a question of fact for which the trier of fact may consider " 'presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*Ibid*.) The requisite state of mind may be proven with circumstantial evidence. (*Id*. at p. 1055.)

Although defendant's "mere presence" at the scene cannot alone establish aiding and abetting (*People v. Pettie* (2017) 16 Cal.App.5th 23, 57), her presence may be considered along with other evidence to establish that she aided and abetted the burglary.

---

[4] Defendant's assertion that "[s]hortly after she woke up, officers were on the scene" is not supported by a citation to the record and is contrary to her testimony professing that she was sleeping and did not remember the events of that morning.

(*Nguyen, supra*, 61 Cal.4th at p. 1055.)  Further, possession of recently stolen property cannot alone establish burglary, but such possession is highly incriminating and need only be slightly corroborated.  (*People v. Mendoza* (2000) 24 Cal.4th 130, 176; *People v. McFarland* (1962) 58 Cal.2d 748, 754-755.)

Here, defendant and her two companions spent the night drinking and driving around town.  The next morning, they were discovered next to the black Toyota at the scene of the crime shortly after the alarm was triggered.  A trail of stolen items led from the automotive shop to the Toyota.  Numerous stolen items were discovered inside three separate areas of the Toyota, which had been packed full such that there was barely room for the three occupants of the car.  Defendant's companion's prints were found on the rolling door used to gain access to the automotive shop, which had been locked the night before.  Officer Moua observed one of defendant's companions placing items in the trunk and shutting it.  Defendant herself had moved from the passenger side of the car to the driver's seat in the time that Officer Moua had been on scene.  When asked what they were doing, defendant told Officer Moua they had "just broken down."

We find this evidence sufficient to corroborate her participation and support her conviction for aiding and abetting burglary.  From it we may infer that defendant knew that at least one of her companions intended to and did enter the automotive shop to steal items, she intended to help her companion(s), and did actually help either by helping to pack the car with stolen goods or by keeping lookout while her companion(s) did just that.  Defendant downplays her statement that they had "just broken down" as not corroborating her participation.  We disagree.  Her use of the word  "just" connoted the passage of a very short period of time, presumably too short to have broken into the shop, stolen numerous items, and loaded those items into their car.  As such, it is reasonable to infer that by suggesting they had just broken down, defendant misled the officer in an attempt to distract from their involvement in the burglary, which was readily apparent given the evidence.  Accordingly, we find defendant has not shown an insufficiency of

7

evidence supporting her burglary conviction. (*Nguyen, supra*, 61 Cal.4th at p. 1055; *People v. Mendoza, supra*, 24 Cal.4th at p. 176; *People v. McFarland, supra*, 58 Cal.2d at p. 754.)

      *2.     The Receiving Stolen Property Conviction*

      Defendant challenges the sufficiency of evidence supporting her receiving stolen property conviction; specifically, she asserts there was inadequate evidence establishing she *possessed* the stolen property.

      Three elements are required to establish the offense of receiving stolen property as proscribed by section 496, subdivision (a): "(1) the property was stolen; (2) the defendant knew the property was stolen; and, (3) the defendant had possession of the stolen property." (*People v. Land* (1994) 30 Cal.App.4th 220, 223.) "Mere access or proximity to stolen goods is not enough to infer possession." (*People v. Martin* (1973) 9 Cal.3d 687, 696; see also *People v. Myles* (1975) 50 Cal.App.3d 423, 428-429 [passenger in car driven and owned by another did not possess stolen televisions in trunk]; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 335-336 [passenger in front seat did not possess stolen chainsaw located in rear passenger seat].) However, "[p]ossession of the stolen property may be actual or constructive and need not be exclusive." (*Land, supra*, at p. 223.) Nor must physical possession be established; rather, "[i]t is sufficient if the defendant acquires a measure of control or dominion over the stolen property." (*Id*. at p. 224.)

      Defendant argues that merely being in the vicinity of the stolen property in the car did not establish that she "possessed" the items for purposes of this crime. We are unpersuaded. Here, it appears defendant acted as the lookout while her companions moved a large volume of stolen goods into the car, keeping both the stolen goods and her companions safe. Moreover, during the time that Officer Muoa was at the scene, defendant shifted from standing at the passenger side of the car to sit in the driver's seat, presumably intending to drive the car away and thus taking greater dominion and control

8

of the car's stolen contents.  This is sufficient to establish she constructively possessed the recently stolen items.  (*People v. Land, supra*, 30 Cal.App.4th at pp. 225-228.) Accordingly, defendant has not established an insufficiency of evidence supporting this conviction.

        3.        *The Vandalism Conviction*

Defendant argues insufficient evidence supports her conviction for vandalism, specifically she contends there was no evidence that her unplugging the wires to the in-car camera damaged them or that the damage was in excess of $400.

Here, the jury convicted defendant of misdemeanor vandalism.  This offense is established by showing the defendant maliciously damaged the property of another. (§ 594, subds. (a), (b); CALCRIM No. 2900.)  The damage done to the property does not have to be permanent.  (See, e.g., *In re Nicholas Y.* (2000) 85 Cal.App.4th 941, 944 [writing on glass with permanent marker].)  Further, there is no need to establish the value of the damaged property for a misdemeanor conviction, which applies to all damage under $400.  (§ 594, subd. (b)(2)(A).)

Defendant compares her removal of the wires supporting the in-car camera system to the removal of a "cellphone charger" from a wall electrical outlet, which could easily be plugged back in.  This comparison is inapposite.  Defendant pulled the wires from the rear in-car camera system rendering that system inoperable.  Photographic evidence reflects loose wires in the back of the officer's patrol car with no apparent way to reconnect them.  Moreover, while Officer Pangelinan testified that she learned the wires in her patrol car had been "placed back in," the specifics of what that entailed is not part of the record from trial.  Regardless, defendant's observation that the repair consisted of reattaching the wires does not negate that defendant damaged the system by removing them.  Accordingly, this claim fails.

9

## B.	*Defendant's Claim of Instructional Error*

Defendant complains the trial court had a sua sponte duty to instruct the jury with the "mere presence" portion of the aiding and abetting instruction contained in CALCRIM No. 401. She contends the court's failure to instruct was prejudicial requiring reversal of her burglary conviction. We disagree.

" ' " 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. ' " ' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 422.) The trial court has a sua sponte duty to give the mere presence portion of the aiding and abetting instructions where there is substantial evidence supporting its consideration. (*People v. Boyd* (1990) 222 Cal.App.3d 541, 557.)

We review questions of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) In so doing, we consider the jury instructions as a whole, as well as the charges and entire record. (*People v. Serrano* (2022) 77 Cal.App.5th 902, 909.)

Here, the trial court instructed the jury with CALCRIM numbers 400 and 401 on aiding and abetting. CALCRIM No. 400 states: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." The portion of CALCRIM No. 401 given to the jury stated: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or

10

conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid facilitate, promote, encourage or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

Defendant faults the trial court for failing to also instruct the jury with bracketed language of CALCRIM No. 401, to wit: "If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor." (CALCRIM No. 401.) She contends this portion of the instruction was necessary because "the sole evidence that [defendant] aided and abetted [her companions] in counts 1 and 2 was [defendant's] mere presence in and round the black Toyota without anything more."

We do not agree with defendant's characterization of the evidence. As explained *ante*, there was substantial evidence beyond her "mere presence" supporting her conviction for aiding and abetting burglary. However, that is not the pertinent inquiry. Rather, we must decide whether there was substantial evidence warranting providing the omitted instruction. (See *People v. Boyd, supra*, 222 Cal.App.3d at p. 557, fn. 14 [rejecting argument that *any* evidence of mere presence, no matter how weak, required the instruction].) We acknowledge defendant's testimony that: she was under the influence of drugs and sleeping at the time of the burglary; she woke up when the car was stopped, and it felt uneven; she recalled being arrested but did not remember any of her other interactions with the officers even after seeing the video showing those interactions. Defendant denied knowing her companions intended to steal anything and did not remember numerous items being loaded into the car. While not the most persuasive

11

showing of "mere presence" given that much of defendant's testimony largely consisted of her inability to recall what had happened, we conclude her testimony was sufficient to trigger the trial court's sua sponte duty to give the "mere presence" portion of the aiding and abetting instruction. (*Ibid*.; *People v. Perry* (1979) 100 Cal.App.3d 251, 260.)

We must therefore decide whether this failure to instruct was prejudicial. (Cal. Const., art. VI, § 13; *People v. Perry, supra*, 100 Cal.App.3d at pp. 260-261.) Instructional errors are judged under two standards, depending on whether the error implicates a federal constitutional right or merely constitutes state law error. (*People v. Pettie, supra*, 16 Cal.App.5th at pp. 60-61.) The former category of error must be shown harmless beyond a reasonable doubt, while the latter asks whether it is reasonably probable that defendant would have received a more favorable result. (*Ibid*.)

Defendant argues the error was of a constitutional dimension because it violated her right to due process. Specifically, she contends the trial court's giving a mere presence instruction as to the receiving stolen property count, but not the burglary count "could have reasonably led at least one juror to believe that [defendant's] 'mere presence' was not relevant to the burglary charge since it was excluded from the instruction." Alternatively, she posits that reversal is also required under the lesser standard because it is reasonably probable that at least one juror would have refused to convict her.

In contrast, the People argue that under the instructions given, it is clear that the jury necessarily found defendant intended to aid and did in fact aid the perpetrators in the commission of the burglary. The People further argue that the omitted instruction was more favorable to the prosecution because it made clear that the jury could consider defendant's presence at the scene when determining whether she aided and abetted the burglary, even if that fact alone could not convict her. Applying either standard, the People assert any error was harmless.

Ultimately, we need not decide which standard of prejudice applies because we conclude the trial court's failure to instruct on "mere presence" is not prejudicial under

12

the more rigorous standard. In making this determination, we examine the entire record, including the arguments of the parties. (*People v. Powell* (2021) 63 Cal.App.5th 689, 715.)

Here, our review of the closing arguments yields nothing that suggested the jury could convict defendant of burglary based on her mere presence alone. Rather, the People argued the evidence established that defendant worked together with her companions to load the car given the timing and volume of items taken. Defendant had coherently answered the officer's questions and acted as though she knew her companions and belonged with them, including sitting in the driver's seat of the car. Thus, the People urged the jury to reject defendant's testimony that her companions were just acquaintances and that she was completely out of it from the drugs. Further, the trail of items leading to the car as well as the items in the car showed defendant was aware of the stolen items and was not merely present. Defendant's closing argument countered that the People had not met their burden because defendant had been "high, drunk[,] and passed out" when she ended up in the parking lot of a burglarized business and thus the People had not established she knew her companions intended to commit a crime or that she intended to help them. Defendant further told the jury that the car had been so stuffed full of stolen items that defendant's companions would have left her behind had authorities not responded to the scene.

Moreover, although the trial court failed to instruct that defendant's mere presence alone could not establish aiding and abetting burglary, the court did instruct the jury on "mere presence" for the receiving property count. That instruction provided in pertinent part: "To *receive property* means to take possession and control of it. Mere presence near or access to the property is not enough. Two or more people can possess the property at the same time." (CALCRIM No. 1750.) The fact that the jury found defendant guilty of receiving indicates it found defendant took possession of the property and controlled it, knowing that defendant's "mere presence" at the scene was not

13

sufficient to make that finding. This signals that the jury would likely find defendant was involved in the burglary, which resulted in the removal of the property of which defendant then took possession, even if given the "mere presence" instruction specifically as to the burglary count.

Thereafter, the jury determined defendant received the stolen property. As such, the jury necessarily rejected defendant's claim that she was intoxicated and merely present and instead found she possessed and controlled the stolen property in the car. Possession of that stolen property is highly suggestive of burglary and need only be slightly corroborated. (*People v. Mendoza, supra*, 24 Cal.4th at p. 176; *People v. McFarland, supra*, 58 Cal.2d at pp. 754-755.) Here, defendant was found at the scene of the burglary shortly after the crime and attempted to mislead the investigating officer concerning how long the group had been at that location. As such, we conclude beyond all reasonable doubt that defendant was not prejudiced by the trial court's failure to instruct the jury that defendant's mere presence alone could not establish that she committed burglary. (See, e.g., *People v. Perry, supra*, 100 Cal.App.3d at pp. 260-261 [trial court's failure to give mere presence instruction in response to defendant's explanation for being in the area not prejudicial].)

## III.  DISPOSITION

The trial court is directed to vacate the premature abstract filed on April 19, 2024, and the judgment is affirmed.

/S/
RENNER, J.

We concur:

/S/
DUARTE, Acting P. J.

/S/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15